IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Berkshire Hathaway Specialty Insurance, | ) |
| | ) Case No. 2:23-cv-1334-BHH |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Bank of America Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY RELIEF

Berkshire Hathaway Specialty Insurance ("Berkshire"), through undersigned counsel, files this Complaint for Declaratory Relief against Bank of America Corporation ("BOA"), and avers as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. This is an action for declaratory relief in accordance with 28 U.S.C. § 2201(a).

2. Venue is proper in this Court because two of the construction projects for which Berkshire wrote the performance bonds and payment bonds at issue in this case are located in Charleston, South Carolina.

3. Berkshire is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business located in the State of Massachusetts, that is licensed to write surety bonds in South Carolina.

4. Bank of America Corporation ("BOA") is a national banking association chartered pursuant to the laws of the United States of America, with its principal place of business and main office located in the State of North Carolina.

5. This Court has jurisdiction over this matter according to 28 U.S.C. § 1332(a) because the matter in controversy is between corporations that are citizens of different states. Additionally, the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

## GENERAL ALLEGATIONS

6. At all material times, Windamir Development, Inc. ("Windamir") was engaged in commercial construction and, as such, from time to time required performance and payment bonds, and sought said bonds from Berkshire, a surety in the business of providing payment and performance bonds to selected entities.

7. Before it would issue said payment and performance bonds, Berkshire required certain protections from Windamir of monies to be paid to Windamir under any bonded contracts and from loss to Berkshire in the event that Windamir failed to perform all of its obligations under any bonded contract or to pay labor and material suppliers on any bonded contract.

8. To induce Berkshire to issue bonds on its behalf, Windamir (and others) signed a General Agreement of Indemnity (the "Indemnity Agreement") with Berkshire, a copy of which is attached as **Exhibit "A."**

9. In reliance on the Indemnity Agreement and its rights of legal and equitable subrogation, and at the request of Windamir, Berkshire issued the following payment and

2

performance bonds (the "Bonds") on the following federal projects, pursuant to the Miller Act:

- Payment and Performance Bonds numbered 47-SUR-300169-01-0002 for Contract W912HN19C3001, Project No. 86711, Construct Vehicle Paint Prep Facility, Ft. Stewart, Georgia (the "Vehicle Paint Prep Facility Project");

- Payment and Performance Bonds numbered 47-SUR-300169-01-0003 for Contract W91HN19C3004, Project No. 89128, Aircraft Test Engine Facility, Hunter Army Airfield, Georgia (the "Aircraft Test Engine Facility Project");

- Payment and Performance Bonds numbered 47-SUR-300169-01-0005 for Contract W912PM19C0020, Project No. 85959, SOF Combat Medic Training Facility, Ft. Bragg, North Carolina (the "Combat Medic Project");

- Payment and Performance Bonds numbered 47-SUR-300169-01-0006 for Contract N6954018D1321, Task Order N6945019F0856, TSB-1 HVAC Repurposing, Joint Base Charleston, South Carolina (the "TSB-1 Project");

- Payment and Performance Bonds numbered 47-SUR-300169-01-0007 for Contract N6945019D0922, Task Order N6945019F0864, Reserve Training Center, Ft. Benning, Georgia (the "Reserve Training Center Project");

- Payment and Performance Bonds numbered 47-SUR-300169-01-0008 for Contract N6945018D1321, Task Order N6945019F0875, Repair Pier X-Ray at Joint Base, Charleston, South Carolina (the "Pier X-Ray Project"); and

- Payment and Performance Bonds numbered 47-SUR-300169-01-0012 for Contract No. W912HN20D4004, Task Order W912HN20F4065 Repair TNG Barracks D-3206, Fort Bragg, North Carolina (the "TNG Barracks Project")

(sometimes collectively referred to as the "Bonded Projects;" the referenced contracts are sometimes collectively referred to as the "Bonded Contracts"). Copies of the Bonds are attached as composite **Exhibit "B."**

10.     All funds paid and to be paid on the Bonded Contracts (the "Bonded Contract Funds") are trust funds for payment of the costs of completing the work under the Bonded

3

Contracts, payment of those supplying labor and materials used in the prosecution of work under the Bonded Contracts, and repayment to Berkshire for amounts it paid to resolve claims on the Bonds, and Berkshire has a first priority right to the Bonded Contract Funds under the Indemnity Agreement and principles of equitable subrogation that is superior to any claim by any lender to or other creditor of Windamir.  *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36 (1962).  The Bonded Contract Funds serve to reduce the loss to Berkshire in the event of the failure of Windamir to perform under the Bonded Contracts.

11. Further, the Bonded Contracts have a common owner, the United States of America, entitling Berkshire to subrogate to and exercise the federal owner's rights of cross-collateralization and/or set-off.

12. The Indemnity Agreement provides, in pertinent part:

**3. Assignment.** Without limitation of, and in addition to, the provisions of Paragraph **4**. below, as security to Surety for the Indemnitor's obligations hereunder, Indemnitors agree, assign, transfer and set over to Surety the Collateral, as defined herein, to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license and right to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract. This assignment becomes effective on the date of this Agreement, but Surety agrees, without limitation of its rights under Paragraph **4.** below, to withhold enforcement of the within assignment until and upon the occurrence of an Event of Default, whereupon Surety shall have the right to enforce and exercise all rights granted herein without further notice or demand.

**4. Security Interest**. As further security for their obligations herein, Indemnitors hereby grant Surety a security interest in, and lien upon, and pledge to Surety all of its right, title and interest, in, to and under, whether now owned or hereafter acquired, the Collateral, and all proceeds thereof . . .

4

**5. Remedies.** If an Event of Default occurs, Surety is authorized and shall have the right, in its sole and absolute discretion, to take possession of and utilize to avoid or reduce any Loss or potential Loss any Collateral . . .

\* \* \*

**10. Trust Fund.** It is expressly agreed and declared that all monies due and to become due under any contract covered by any Bond are trust funds, whether in the possession of the Indemnitors or Principals or otherwise, for the benefit of Surety and for payment of all obligations in connection with any such contract for which the Surety might or would be liable under any Bond and for payment of all obligations of Indemnitors under this Agreement. Indemnitors or Principals coming into possession of any such monies shall hold such funds in trust, to be utilized solely for the trust purposes set forth above. This Agreement constitutes notice of such trust. Surety has the right, but not the obligation, to require that trust funds be placed in a dedicated trust fund account.

Collateral is defined as:

**25.   D. Collateral** means all right, title and interest of any one or more Indemnitors in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory; (c) all subcontracts and purchase orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest, as well as all claims, causes of action and proceeds related thereto; (e) all intellectual property (including proprietary software) necessary or required to perform any Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; (g) any real or personal property, the improvement of which is secured by any Bond, including any construction, mechanic's or builder's lien rights; (h) any statutory trust rights; and (i) any rights under any contract of insurance or financial instrument, including any letter of credit, guarantee or surety bond.

13.     One or more of the events set forth in Paragraph 25(E) of the Indemnity Agreement has occurred, including, without limitation: failure to timely perform or comply with any Bonded Contract; breach of any Bond or declaration of default under any Bonded

Contract (whether admitted or contested); Surety incurring any Loss; breach of or failure to timely comply with the Indemnity Agreement; any occurrence which deprives or impairs any Principal, Indemnitor and/or Surety of the use of any Collateral; and any default, however described, which occurs under any document relating to the financial indebtedness of any Principal or Indemnitor, as a result of which that financial indebtedness is or becomes capable of being rendered prematurely due and payable.

14. Windamir encountered difficulties in completing various of the Bonded Projects, failed to honor its obligations on the Bonded Projects, and acknowledged that it is in default on the Bonded Projects. *See* Letters of Default, attached as **Exhibit "C."**

15. Further, the Government terminated Windamir for default on the Reserve Training Center Project (attached as **Exhibit "D"**) and issued an Acknowledgement of Voluntary Default and Notice of Termination on the TNG Barracks Project and a Demand of Surety on the Combat Medic Project (attached as composite **Exhibit "E"**).

16. Pursuant to its performance bond obligations, Berkshire has to date entered into takeover agreements (the "Takeover Agreements") with the federal government in connection with the following bonded projects: (1) the TNG Barracks Project (attached as **Exhibit "F"**); (2) the Combat Medic Project (attached as **Exhibit "G"**).

17. Berkshire has also received claims from subcontractors and suppliers under various of the Bonds alleging that Windamir failed to pay amounts due to said subcontractors and suppliers on various of the Projects.

18. Berkshire incurred attorneys' and consultants' fees and costs in investigating and resolving claims under the Bonds, and continues to incur these fees and costs as it

6

continues performance under the takeover agreements, and continues to be exposed to claims under the Bonds.

19. Berkshire has incurred losses of $4,247,941.98 by reason of having issued the Bonds and continues to incur losses and receive claims under the Bonds.

20. Pursuant to the Takeover Agreements, Berkshire has received Bonded Contract Funds in the amount of $2,893,429.91, to which it is entitled based on Windamir's default and Berkshire's completion of the work under the Takeover Agreements.

21. BOA issued a Small Business Administration ("SBA") backed loan to Windamir and its current owner which was, on information and belief, used by the current owner to purchase the company. BOA has alleged that Windamir defaulted on the loan and has claimed an interest in the Bonded Contract Funds despite Berkshire's clear priority right to the Bonded Contract Funds.

22. Windamir's defaults on the Projects terminated its right to Bonded Contract Funds on those Projects. Further, Windamir did not earn the Bonded Contract Funds to the extent that it failed to pay subcontractors and suppliers, and defaulted on Bonded Projects.

23. BOA, as alleged assignee of Windamir, has no greater rights in the Bonded Contract Funds than Windamir. Since Windamir has no right to the Bonded Contract Funds, BOA has no right to the Bonded Contract Funds.

24. Further, Berkshire has a priority right to the Bonded Contract Funds under its well-recognized rights of legal and equitable subrogation.

25. The Government has recognized Berkshire's right to the Bonded Contract Funds under the Takeover Agreements.

26. However, on the TS-1 and Pier X-Ray Projects, the agency administering those contracts, NAVFAC, has declined to enter into takeover agreements with Berkshire at this time or to recognize its priority right to the Bonded Contract Funds absent Court Order in light of a notice from BOA of its claim to Bonded Contract Funds.

27. Windamir hired and retained certain employees on the Bonded Projects, and used Bonded Contract Funds, to which Berkshire has a priority right, to pay employees on the Bonded Projects. The Bank did not fund any payroll on the Bonded Projects.

28. Windamir applied for and received employee retention credits from the United States in the amount of $749,693.38 (the "ERC") related to payroll for employees providing field and office work on the Bonded Projects. The ERC replenishes the Bonded Contract Funds utilized to pay employees on the Bonded Projects and, as such, Berkshire has a priority right to the ERC.

## COUNT I -- CLAIM FOR DECLARATORY RELIEF

29. Berkshire realleges and incorporates paragraphs 1 through 28 as if fully set forth herein.

30. A bona fide dispute, actual controversy and adverse interest exists between Berkshire and BOA concerning the right to Bonded Contract Funds. Both Berkshire and BOA claim a right in and to the Bonded Contract Funds, including the ERC.

31. Berkshire seeks certainty as to its priority right to the Bonded Contract Funds, including the ERC. Accordingly, Berkshire has an actual, present, and practical

8

need to have any doubt on this issue resolved and removed. Thus, declaratory judgment is proper under 28 USC § 2201.

32. The declaration Berkshire seeks relates only to whether it has a priority right over BOA in and to the Bonded Contract Funds, including the ERC.

33. Thus, there is a case of actual controversy within the jurisdiction of this Court and declaratory judgment in favor of Berkshire is proper.

WHEREFORE, Berkshire requests that this Court enter a declaratory judgment against BOA declaring whether Berkshire has the priority right to the Bonded Contract Funds, including the ERC. Additionally, Berkshire seeks such further relief as this Court deems proper.

BELSER LAW FIRM, PA

s/ H. Freeman Belser
H. Freeman Belser [Fed. ID No. 9503]
Creston W. Brown [Fed. ID No. 13180]
William C. Dillard, Jr. [Fed. ID No. 11029]
1325 Park Street, Suite 300 (29201)
Post Office Box 96
Columbia, SC 29202
(803) 929-0096
freeman@belserpa.com
creston@belserpa.com
will@belserpa.com

Attorneys for Plaintiff

Columbia, South Carolina
April 3, 2023